UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TONYA B.[1],                      )
                                  )
            Plaintiff,            )
                                  )
      v.                          )        No. 1:21-cv-01234-DLP-SEB
                                  )
KIJAKAZI,                         )
                                  )
            Defendant.            )

## ORDER

Plaintiff Tonya B. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court hereby **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

## I.   PROCEDURAL HISTORY

Tonya filed her applications for Title II DIB and Title XVI SSI on March 4, 2019, and April 8, 2019, respectively. (Dkt. 12-5 at 5-12, R. 203-10; Dkt. 14 at 1).[2] Tonya alleged disability resulting from blindness in her left eye, anxiety, and

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.
[2] The Court notes that the ALJ's decision states that Tonya filed her applications for Title II and Title XVI benefits on March 1, 2019; however, this is not consistent with the applications in the administrative record.

depression. (Dkt. 12-6 at 6, R. 227). The Social Security Administration ("SSA") denied Tonya's claims initially on June 4, 2019, (Dkt. 12-3 at 2-31, R. 62-91; Dkt. 12-4 at 2-9, R. 124-31), and on reconsideration on July 30, 2019, (Dkt. 12-3 at 32-63, R. 92-123; Dkt. 12-4 at 16-29, R. 138-51).

Tonya filed a written request for a hearing, and on July 28, 2020, Administrative Law Judge ("ALJ") Jody Hilger Odell conducted a hearing, with Tonya, her non-attorney representative, and vocational expert Joanne White participating by phone. (Dkt. 12-4 at 31-32, R. 153-54; Dkt. 12-2 at 35-62, R. 34-61). On September 11, 2020, ALJ Odell issued an unfavorable decision finding that Tonya was not disabled. (Dkt. 12-2 at 18-29, R. 17-28). Tonya appealed the ALJ's decision, and, on March 30, 2021, the Appeals Council denied Tonya's request for review, making the ALJ's decision final. (Dkt. 12-2 at 2-4, R. 1-3). Tonya now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the

work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves h[er] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

---

[3] Because the statutory references for SSI and DIB claims are substantially similar, the Undersigned will reference them interchangeably throughout this opinion.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Tonya is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The

ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   BACKGROUND

### A. Factual Background

Tonya was forty-six years old at the time of her November 6, 2015 alleged onset date. (Dkt. 12-3 at 2, R. 62). She has at least a high school education. (Dkt. 12-2 at 28, R. 27). She has relevant past work history as a caregiver, housekeeper, and warehouse worker. (Id. at 27, R. 26).

### B. ALJ Decision

In determining whether Tonya qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Tonya was not disabled. (Dkt. 12-2 at 18-29, R. 17-28). At Step One, the ALJ found that Tonya had not engaged in substantial gainful activity since the alleged onset date of November 6, 2015. (Id. at 21, R. 20).

At Step Two, the ALJ found that Tonya suffered from the medically determinable severe impairments of left eye blindness with cataracts, exotropia, presbyopia, amblyopia, and likely anisometropia; anxiety; agoraphobia; and depression. (Id.). The ALJ also found that that Tonya had non-severe impairments

6

of sinusitis, pleuritic pain, back pain, urinary frequency, colon polyp, perimenopause, vitreous floaters involving the right eye, and dizziness. (Id.).

At Step Three, the ALJ found that Tonya's impairments did not meet or medically equal the severity of one of the listed impairments in the Listings, specifically considering Listings 2.02 (loss of central visual acuity); 2.03 (contraction of the visual fields in the better eye); 2.04 (loss of visual efficiency); 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Dkt. 12-2 at 22-23, R. 21-22). When considering the "paragraph B" criteria, the ALJ found that Tonya had no limitation in adapting or managing oneself; mild limitation in concentration, persistence, or maintaining pace; and moderate limitations in interacting with others and understanding, remembering, or applying information. (Id.). The ALJ also found the "paragraph C" criteria not satisfied. (Id. at 23, R. 22).

After Step Three but before Step Four, the ALJ found that Tonya had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations: cannot perform work requiring depth perception or peripheral vision on the left; limited to performing simple, routine tasks involving simple, work-related decisions, and occasional interaction with coworkers, supervisors, or the general public. (Dkt. 12-2 at 23-27, R. 22-26).

At Step Four, the ALJ concluded that Tonya is unable to perform any of her past relevant work. (Dkt. 12-2 at 27-28, R. 26-27). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Tonya's age,

education, work experience, and residual functional capacity, other jobs exist in significant numbers in the national economy that Tonya can perform. (Dkt. 12-2 at 28-29, R. 27-28). The ALJ thus concluded that Tonya was not disabled. (Id. at 29, R. 28).

## IV.   ANALYSIS

Tonya challenges the ALJ's decision on three grounds. First, Tonya contends that the ALJ's erred in assessing Plaintiff's visual limitations. (Dkt. 14 at 13-16). Second, Tonya argues that the ALJ's conclusion regarding Plaintiff's mental health treatment is not supported by substantial evidence. (Id. at 15). Third, Tonya maintains that the ALJ erred in her consideration of the opinions of Nurse Practitioner Krista Schwuchow and the state agency consultants. (Id. at 16-17). The issues are intertwined; thus, the Court will consider most issues together.

### A.  The ALJ properly accounted for Tonya's visual limitations

Plaintiff first contends that the ALJ committed multiple errors in assessing her visual limitations and, as a result, remand is warranted. (Dkt. 14 at 13-15). The Commissioner, for her part, maintains that remand is not warranted because the ALJ appropriately assessed Plaintiff's visual limitations and those limitations are supported by substantial evidence. (Dkt. 15 at 5-7).

First, the Plaintiff contends that the ALJ erred by failing to account for all of her visual limitations in the RFC assessment. (Dkt. 14 at 14). Tonya further contends that because of these errors, the ALJ's Step Five decision is not supported by substantial evidence. (Id. at 14-15). In response, the Commissioner maintains

that the visual limitations provided in the RFC are supported by the opinion of the Plaintiff's treating optometrist, Dr. Julia Arnett Nolte, who the ALJ found persuasive. (Dkt. 15 at 5-6). In regard to the Step Five argument, the Commissioner maintains that Tonya's argument fails because she has not provided any objective medical evidence or opinion warranting greater limitations than the ALJ found. (Id. at 6). The Court agrees.

The RFC is the most Tonya can do despite the limiting effects of her impairments. 20 C.F.R. § 404.1545(a). The Regulations and Seventh Circuit caselaw make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). *See also* SSR 96-8p; 20 C.F.R. § 416.945(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." Varga, 794 F.3d at 813.

As noted above, the ALJ found that Tonya had the residual functional capacity to perform a full range of work at all exertional levels, however, she noted a few non-exertional limitations. Specifically, the ALJ found Tonya unable to "perform work requiring depth perception or peripheral vision on the left." (Dkt. 12-

9

2 at 23, R. 22). Here, Tonya argues the ALJ overlooked limitations that would have warranted greater restrictions, including a June 2019 eye examination that noted floaters in Tonya's right eye and left eye exotropia, a complaint by Tonya in June 2020 that she was experiencing blurriness in her good eye, and the testimony of the VE that the DOT did not provide guidance about monocular vision. (Dkt. 14 at 14).

When crafting the claimant's visual RFC determination, the ALJ relied on Tonya's ophthalmology evaluations, her subjective statements to treating physicians at the time of appointments, her medical records, and hearing testimony. (Dkt. 12-2 at 24-26, R. 23-25). The ALJ noted that in May 2018, Plaintiff's treating optometrist, Dr. Julia Arnett Nolte opined that Tonya's "ability to sit, stand, walk, lift, carry, handle objects, hear, speak and travel are not limited due to her eye condition" however "jobs that require depth perception…[were] not possible." (Dkt. 12-2 at 27, R. 26; Dkt. 12-7 at 20, R. 339). The ALJ found this opinion persuasive. (Dkt. 12-2 at 27, R. 26). The ALJ also referenced Tonya's 2019 diagnosis of left eye blindness, exotropia,[4] cataracts, presbyopia, and vitreous floaters of the right eye at the claimant's annual ophthalmology evaluation.  (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 144-46, R. 463-65). During this visit, Tonya reported that she was experiencing some black dots in her right eye vision, but exhibited a visual acuity measuring 20/20 on the right. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 144-46, R. 463-65). The ALJ noted, the following year, that Tonya did not indicate any persistent black dots in

---

[4] Exotropia is a condition in which one or both eyes turn outward away from the nose. Donna Christiano, *What is Exotropia?*, HEALTHLINE (Sept. 29, 2018), https://www.healthline.com/health/exotropia.

her right eye vision, and that she continued to have full visual fields in her right eye. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 277-79, R. 596-98). Based on these findings by the ALJ, the Court can sufficiently trace the ALJ's reasoning as to why no functional visual limitations for the right eye were included in the RFC, thus remand is not warranted.

Next, Tonya argues that the ALJ erred in failing to discuss whether the claimant's visual impairments would affect her ability to stay on task and ability to perform at a competitive speed. (Dkt. 14 at 14). (Id.). While the claimant is correct that the ALJ did not address this in her decision, Tonya has failed to identify any medical records or evidence that would support the need for these potential functional limitations. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (claimant bears the burden of showing that she has impairments that affect her ability to work and pointing to various diagnoses and complaints is insufficient to establish the existence of a functional limitation). Moreover, Tonya fails to address Dr. Nolte's opinion that she did not have any visual limitations beyond depth perception or explain how any of the cited records demonstrate that she would be off-task or unable to perform at a competitive speed because of her visual impairments. Without this evidence, the Plaintiff has failed to demonstrate remand is warranted. It is Tonya's burden to establish not just the existence of her conditions, but to provide evidence that they support specific limitations affecting her capacity to work. *Weaver v. Berryhill*, 746 F. App'x 574, 578-579 (7th Cir. 2018). Without any physician of record indicating that Tonya would be off task for any amount of the

11

workday or unable to perform at a competitive speed, due to her visual impairments, the ALJ did not err in not including such a limitation in the visual RFC determination.

Tonya also appears to argue that the RFC and the hypothetical posed to the VE failed to account for her monocular vision impairment. (Dkt. 14 at 14). As noted above, Dr. Nolte opined that Tonya's eye condition limited the claimant from participating in jobs that required depth perception. (Dkt. 12-7 at 20, R. 339). When making an RFC determination, an ALJ only needs to include those limitations supported by the record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Acknowledging Dr. Nolte's opinion, Tonya's subjective reports of her symptoms, and medical records post-dating Dr. Nolte's opinion, the ALJ thoroughly discussed her reasons for posing greater limitations than those assessed by Tonya's treating doctor, including no jobs requiring either depth perception or peripheral vision. *Gedatus v. Saul*, 994 F.3d 893, 904-05 (7th Cir. 2021) ("A fundamental problem is [Plaintiff] offered no opinion from any doctor to set...any other limits, greater than those the ALJ set."); *See also Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) (claimant failed to "point to any objective evidence or medical opinions in the record that support stricter limitations" than those set by the ALJ). If Tonya believed more evidence could show she had additional visual limitations, she "had the burden to supply that evidence to the ALJ." *Lyn P. v. Saul*, No. 19 C 1596, 2021 WL 2823089, at *8 (N.D. Ill. July 7, 2021) (citing *Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021). Because both the

12

hypothetical posed to the VE and the RFC assessment reasonably accounted for Tonya's functional visual limitations supported by the record, the ALJ built an accurate and logical bridge from the evidence to her conclusion. Accordingly, the Court finds remand is not warranted on this issue.[5]

## B. The ALJ properly assessed Tonya's mental impairments

Tonya also argues that the ALJ erred by failing to account for all of her documented mental limitations. (Dkt. 14 at 15-17). First, the claimant takes issue with the ALJ's finding that "regular psychiatric treatment was relatively effective at improving the claimant's psychological symptoms and mental functioning throughout the remainder of the alleged period of disability." (Dkt. 12-2 at 26, R. 25). Tonya argues that in making this finding the ALJ ignored the Plaintiff's hearing testimony and the opinion of her treating nurse practitioner, Krista Schwuchow. (Dkt. 14 at 15).

Due to Tonya's depression, anxiety, agoraphobia and panic attacks, the Plaintiff's primary care provider referred the claimant for a behavioral health evaluation. On December 13, 2017, Ms. Evette Blackman, a licensed clinical social worker, conducted an initial assessment and mental status examination of Tonya. (Dkt. 12-7 at 116-19, R. 435-38). On examination, Tonya exhibited normal, calm

---

[5] Tonya also contends that the case should be remanded because the ALJ impermissibly discounted the severity of Plaintiff's visual impairments because Plaintiff required infrequent ophthalmology evaluations during the relevant period. (Dkt. 14 at 16). The Commissioner argues that any statement the ALJ made regarding the frequency of treatment for Plaintiff's eye problems is harmless error. (Dkt. 15 at 7). The Court agrees. As the Seventh Circuit explained in *Halsell v. Astrue,* "[n]ot all of the ALJ's reasons [for discounting a claimant's subjective symptoms] must be valid as long as enough of them are." 357 F. App'x 717, 722 (7th Cir. 2009). Plaintiff does not allege any other error with regards to the ALJ's subjective symptom analysis nor does the Court find any. Accordingly, remand is not warranted on this issue.

behavior; normal speech pattern; casual appearance; oriented to person, place, time and purpose; friendly; cooperative; good eye contact; logical clear thought processes; appropriate thought content; intact memory; partial insight; and average intelligence. (Id. at 117-18, R. 436-37). Ms. Blackman discussed setting up an initial appointment with Nurse Practitioner Krista Schwuchow to complete an initial medication evaluation. (Id. at 118, R. 437). Tonya was a "no show" for her appointment with Ms. Schwuchow on January 12, 2018. (Dkt. 12-7 at 114, R. 433). During Tonya's next session with Ms. Blackman, on January 31, 2018, the claimant reported that her mood had improved, her sleep was better, and that she had regained some energy back. (Dkt. 12-7 at 110, R. 429). Tonya expressed that she continued to become anxious when driving, when placed in stressful situations, when around crowds, or when she was in conflict with someone. (Id.). She also reported that she had experienced two panic attacks since her last session. (Id.). In Dr. Matthew Overley's progress note dated January 31, 2018, he reported that Tonya's mood was better; her concentration, anxiety, energy, enjoyment in activities, and work performance was improving. (Dkt. 12-7 at 112, R. 431).

Tonya began treating with Ms. Schwuchow in February 2018. (Dkt. 12-7 at 107-09, 197, R. 426-28, 516). During the initial psychiatric medication evaluation, on February 2, 2018, Ms. Schwuchow noted Tonya's normal speech pattern; well-groomed appearance; calm, cooperative behavior; logical, clear thought processes; appropriate thought content; intact memory; appropriate judgment and insight; and average intelligence. (Dkt. 12-7 at 108, 118 R. 427, 437). Ms. Schwuchow diagnosed

14

Tonya with depression with anxiety and agoraphobia with panic attacks, and prescribed psychiatric medications. (Id. at 108, R. 427).

During her February 14, 2018 behavioral therapy session with Ms. Blackman, Tonya reported that she had begun her psychiatric medications two days prior, and that she was feeling "okay." (Dkt. 12-7 at 183, R. 502). Tonya failed to appear for her next appointment on February 27, 2018 with Ms. Blackman. (Dkt. 12-7 at 104, R. 423).

Tonya did not reengage with her mental health providers again until March 19, 2019. During this March 2019 session with Ms. Blackman, Tonya reported that she was not on any psychotropic medications, and that she had been struggling with her mood and sleep issues for the last three months. (Dkt. 12-7 at 90, R. 409). While she was not sure if she wanted to begin therapy, Tonya did indicate her interest in reengaging with Ms. Schwuchow, and her primary care doctor. (Id.). Ms. Blackman recommended the claimant schedule an appointment with Ms. Schwuchow to discuss her sleep issues. (Dkt. 12-7 at 91, R. 410).

On June 24, 2019, Tonya met with Ms. Schwuchow, reporting that she had previously stopped taking her prescriptions because she didn't like them. (Dkt. 12-7 at 139, R. 458). When discussing her symptoms, Tonya indicated that her anxiety and sleep disturbances had improved over time, but, she had not been able to sleep over the last two weeks. (Id.) Tonya also expressed that she was crying daily and struggling with fatigue. (Id.). During the mental status examination, Ms. Schwuchow found Tonya exercised normal speech patterns; logical, clear, and goal

directed thought processes; age appropriate judgment and insight; average intelligence; intact memory; appropriate thought content; well-groomed; and calm, cooperative behavior with no abnormal movements. (Dkt. 12-7 at 140, R. 459). Ms. Schwuchow noted Tonya's dysphoric mood, and that her mood and affect were congruent. (Id.) Ms. Schwuchow started Tonya on Prozac (Fluoxetine) to address Tonya's depression and anxiety symptoms. (Id.)

During a follow-up appointment, on January 24, 2020, Tonya reported that her depression was better, and that she had stopped taking her medications except for the Clonazepam.[6] (Dkt. 12-7 at 205, R. 524). Tonya continued to complain about her sleep disturbances and fatigue, however, she indicated that her crying spells, agitation, concentration, and mood had improved. (Id.). Ms. Schwuchow discontinued the Prozac and started Tonya on Fluoxetine. (Dkt. 12-7 at 206, R. 525). She also prescribed Amitriptyline for Tonya's insomnia, but recommended that Tonya try taking Olly Melatonin (sleep) gummies first to address her sleep issues. (Id.).

During the May 12, 2020 appointment, Tonya reported that her medications were helping, and that she was experiencing more good days than bad days. (Dkt. 12-7 at 202, R. 521). The Plaintiff again complained of sleep issues, crying spells over the last three weeks, worsening concentration, increased anxiety, mood up and down and fatigue at times. (Id. at 202-03, R. 521-22). On examination, Ms.

---

[6] Clonazepam is used to prevent and control seizures. It is also used to treat panic attacks. *Clonazepam – Uses, Side Effects, and More*, WEBMD, https://www.webmd.com/drugs/2/drug-14403-6006/clonazepam-oral/clonazepam-oral/details (last visited Sept. 8, 2022).

Schwuchow observed Tonya exercised normal speech; age-appropriate judgment and insight; anxious mood; intact memory; logical, clear, and goal directed thought processes; appropriate thought content; friendly behavior; and that her appearance was well-groomed and no acute distress. (Dkt. 12-7 at 203, R. 522). Ms. Schwuchow increased Tonya's Amitriptyline and Clonazepam and refilled her Fluoxetine. (Id.). Ms. Schwuchow also completed a Medical Statement, opining that Tonya had marked limitations in concentration, persistence, and pace; would be absent from work more than four days per month; and would be off task 90% of an 8-hour workday due to her impairments. (Dkt. 12-7 at 197-98, R. 516-17). Ms. Schwuchow explained that her opinion was based on Plaintiff's struggles with insomnia, poor concentration and focus, daily crying spells, sleepiness during the day, restlessness, panic attacks, anxiety around other people, difficulty staying on task, low motivation and energy, and depression. (Dkt. 12-7 at 198, R. 517).

In the case, the ALJ's opinion demonstrates a careful consideration of Plaintiff's mental health treatment history. The ALJ begins by noting that Tonya briefly sought psychiatric treatment for worsening depression and anxiety in late 2017 and early 2018. (Dkt. 12-2 at 25, R. 24). The ALJ noted that Tonya had described "worsening depression, crying spells, anxiety attacks, difficulty sleeping, concentration problems, and excessive worrying." (Dkt. 12-2 at 25, R. 24). The ALJ acknowledged the mental status exams from that period demonstrating Tonya was withdrawn with a sad, dysphoric, or anxious affect. (Id.). The ALJ also acknowledged that these same records demonstrated that the Plaintiff was calm

17

with normal speech, logical thought processes, an intact memory, no concentration-related deficits, and a euthymic affect. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 104-14, 116-19, 183-91, 249-61, R. 423-33, 435-38, 502-10, 568-80).

The ALJ acknowledged Tonya did not seek psychiatric evaluations or make any significant, ongoing complaints of poorly controlled psychological symptoms throughout the remainder of 2018. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 173, R. 492). The ALJ reasoned, and the claimant has not provided any alternative explanation, that Tonya's lack of additional psychiatric evaluations or significant ongoing complaints in 2018 demonstrated that her mental impairments "were relatively well-controlled and not severely limiting." (Dkt. 12-2 at 25, R. 24).

When Tonya returned for a behavioral health consultation in March 2019, the ALJ noted that the claimant complained of significant mood problems and trouble sleeping. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 90, R. 409). The ALJ referenced that during the consultation, Tonya stated that she has stopped taking her psychotropic medications. (Id.). The ALJ also noted that Tonya did not describe any poorly controlled anxiety, and that Ms. Blackman encouraged the claimant to reengage with therapy. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 90-91, R. 409-10).

The ALJ also considered the examination performed by psychological consultant, Dr. Jared Outcalt, in May 2019. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 126-33, R. 445-52). Tonya complained of significant depression, difficulty sleeping, and anxiety. (Id.). On examination, Dr. Outcalt, similar to Ms. Schwuchow's finding, noted that Tonya was cooperative, relaxed, friendly, and neatly groomed with clear

18

speech, consistent eye contact, a normal affect, a normal memory, and intact concentration. (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 129-32, R. 448-51). Dr. Outcalt diagnosed Tonya with persistent depressive disorder with anxious distress, (Dkt. 12-2 at 25, R. 24; Dkt. 12-7 at 132, R. 451), but found the claimant capable of carrying out simple instructions, making appropriate judgments on complex work-related decisions, handling routine changes, and interacting appropriately with others. (Dkt. 12-2 at 27, R. 26; Dkt. 12-7 at 132-33, R. 451-52).

The ALJ ultimately concluded that the record demonstrated Plaintiff's psychiatric treatment was relatively effective at improving her psychological symptoms. (Dkt. 12-2 at 26, R. 25). While Plaintiff contends that her testimony, the medical record, and nurse practitioner's opinion demonstrate that she is still severely limited, this is simply an invitation to reweigh the evidence.

The Court may not substitute its own judgment for that of the Commissioner by reconsidering facts, reweighing evidence, or resolving conflicts in evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Esquibel v. Berryhill*, No. 1:18-CV-159-JPK, 2019 WL 1594339, at *2-3 (N.D. Ind. Apr. 15, 2019); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted); *Clifford*, 227 F.3d at 869 (noting that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner"). This is not a case where the ALJ ignored evidence contrary to her conclusion or failed to build a

logical bridge to her conclusion. *Gedatus*, 994 F.3d at 901. Moreover, the claimant has failed to present any evidence that the ALJ did not consider that would affect the ALJ's determination. Here, the ALJ provided sufficient analysis for the Court to trace her reasoning and Tonya has not shown any inaccuracies with that analysis. Thus, the Court does not find remand appropriate here.

Next, Tonya argues that the ALJ failed to properly consider Ms. Schwuchow's medical statement. Plaintiff argues that Ms. Schwuchow opined several functional limitations that would preclude employment, including being off-task and excessive absences. (Dkt. 14 at 16-17). Tonya maintains that the ALJ's analysis of Ms. Schwuchow's opinion is deficient because the ALJ failed to recognize the evidence that supported Ms. Schwuchow's off-task functional limitation, including Tonya's sleeping issues, crying spells, and fatigue. (Id. at 17).

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of [her] greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims, such as Tonya's, filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. § 404.1520. . . (2017)." *Id*. The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c.

When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of Social Security policies. *See Inman v. Saul*, No. 1:20-cv-231-DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021). The most important factors are the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907 (N.D. Ind. June 16, 2021).

In evaluating the medical opinions, the ALJ found Ms. Schwuchow's opinion "less persuasive" on the basis that it was not "entirely consistent with the objective evidence." (Dkt. 12-2 at 27, R. 26). The ALJ provided sufficient analysis, throughout her decision, for discounting Ms. Schwuchow's opinion. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (citing *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (noting that the court reads the ALJ's decision as a whole and with common sense)). As noted previously, the ALJ found Tonya's mental health treatment relatively effective at improving Plaintiff's psychological

symptoms and mental functioning when the claimant engaged in consistent treatment. (Dkt. 12-2 at 26, R. 25).

While the Plaintiff points to her "complaints of and treatment for poor sleep, fatigue, and crying spells" as supporting Ms. Schwuchow's off-task functional limitation, the ALJ correctly noted that Tonya's symptoms improved after she was started on psychotropic medications. (Dkt. 12-2 at 25, R. 24). Further, Tonya has failed to direct the Court to any treatment records, progress reports, or mental status examinations that the ALJ ignored or supported Ms. Schwuchow's functional limitation that Tonya would be off task 90%.

From the record evidence, the Court notes that Tonya consistently remarked of her mental health improvements when she was consistent with her therapy and medications. (Dkt. 12-2 at 26, R. 25; *see, e.g.*, Dkt. 12-7 at 139, R. 458 (feeling okay and anxiety 7/10 improved); Dkt. 12-7 at 208, R. 527 (feeling better, and more energy though still struggles with fatigue at times); Dkt. 12-7 at 205, R. 524 (feeling better, still struggles with fatigue at times, and tearfulness is better than it was, not crying as often); Dkt. 12-7 at 211, R. 530 (increase in Prozac has helped with depression and anxiety)). In addition, state agency consultative examiner Dr. Outcalt, who the ALJ found somewhat persuasive, noted on examination that Tonya responded to questions with good effort, remained attentive, persisted well through each task presented, and had intact attention and concentration. (Dkt. 12-7 at 130-32, R. 449-51). The ALJ also imposed greater limitations than those opined by Dr. Outcalt. (Dkt. 12-2 at 23, R. 22). While the ALJ found Ms. Schwuchow's opinion

22

"less persuasive," she built a logical bridge between the evidence and her conclusion. Because the ALJ's assessment of Ms. Schwuchow's opinion was supported by substantial evidence, the Court declines to remand on this issue.

Lastly, Tonya argues that the ALJ's decision to find the state agency consultants' opinions "rather persuasive" is erroneous because the "physicians did not have access to the entire file." (Dkt. 14 at 17; Dkt. 16 at 4). The Court finds this one sentence conclusory argument undeveloped, and thus waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

## V.   CONCLUSION

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 9/8/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email